UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW ALAN HAMPER,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

Case No. 08-14016

Sean F. Cox
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 20)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On September 17, 2008, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Sean F. Cox referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of Social Security Disability Insurance Benefits.  (Dkt. 2).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 13, 14).

B.      Administrative Proceedings

Plaintiff filed the instant claims on November 16, 2005, alleging that he became unable to work on June 9, 2005.  (Tr. at 45).  The claim was initially disapproved by the Commissioner on December 19, 2005.  (Tr. at 12).  Plaintiff requested a hearing and on November 7, 2007, plaintiff appeared with counsel before Administrative Law Judge (ALJ) John W. Wojciechowski, who considered the case *de novo*.  In a decision by the Appeals Council dated December 18, 2007, the ALJ found that plaintiff was not disabled.  (Tr. 9-19).  This became the Commissioner's final decision when on July 31, 2008, plaintiff's request for review was denied.  (Tr. at 3-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    ALJ Findings

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011 and had not engaged in substantial gainful activity since June 9, 2005, the alleged onset date.  (Dkt. 7, p. 14).  The ALJ concluded that plaintiff had the following severe combination of impairments: degenerative joint disease of the right hip, osteoarthritis, epicondylitis, and deep vein thrombosis and that he had been diagnosed with the above impairments for which he received treatment.  The ALJ concluded, however, that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.

The ALJ found that plaintiff had the residual functional capacity to perform a limited range of light work and was able to stand or walk for 6 hours and sit for 2 hours in an 8-hour workday, lift and/or carry 10 pounds frequently and 20 pounds occasionally, and can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl.  The ALJ also found that plaintiff was unable to climb ladders, ropes and scaffolds and needs a sit/stand option at work.

Plaintiff had been involved in an automobile accident in 1983 and later had a successful hip fusion.  At the hearing, plaintiff testified that he stopped working because of chronic pain in his neck, shoulders, back and arms.  Plaintiff had

problems with his right elbow and right shoulder along with carpal tunnel

syndrome of the right wrist.  He had a tear on his left knee but did not have surgery

to repair the tear.  He spent much time of his time watching television and sleeping.

Plaintiff testified that he ran errands three days a week.  He had a driver license and

drove regularly, shops, and did some housework.  He testified that he could stand

for about half an hour at a time, sit for 10-15 minutes, lift and/or carry 10 pounds.

He also visited with family and friends 3-4 times a week and went to sporting

events.

After considering the record evidence, the ALJ found that plaintiff's

medically determinable impairments could reasonably be expected to produce the

alleged symptoms, but that his statements concerning the intensity, persistence and

limiting effects of these symptoms were not entirely credible.  The ALJ noted that

diagnostic examinations did not show that plaintiff had a disabling condition.

Specifically, the ALJ referred to an electromyogram (EMG) of the lower

extremities in April 2005, which only showed evidence of a pre-existing sciatica

and no evidence of any new neuropathy.  In addition, an EMG of the right wrist in

November 2005 showed evidence of a mild median neuropathy; an EMG of the

right lower extremity in October 2006 showed the absence of muscle strength and

atrophy; a computed tomography (CT) scan in January 2005 of the chest, abdomen,

and pelvis was negative for any disease or acute process; a CT scan of the lumbar

spine showed only mild degenerative changes without evidence of a fracture and ankylosis of the right hip; and plaintiff had a normal result on an x-ray of his right shoulder in August 2007.

According to the ALJ, the clinical signs in the treatment notes of plaintiff's treating physicians also did not show that plaintiff had a disabling condition. Donald Hardman, M.D., a treating physician, evaluated the x-rays as showing a fairly stiff lumbar spine with minimal evidence of arthritis. He also found the patellae of the claimant's knee to be articulating properly. James D. Ostrander, an advanced practice registered nurse, opined the x-ray showed osteoarthritis of the knee. Julie A. Zielinski, M.D., conducted an evaluation of plaintiff and described his overall gait as good. Sensation was decreased at L5 and Sl, but the knee, ankle and toe flexion and extension were 5 out of 5. Plaintiff's patellar and quadriceps reflexes seemed to be slightly increased on the right. There was no pain on palpation over the spinous processes and mild tenderness in the paraspinal muscle.

Plaintiff was also evaluated by Dr. Hardman, who reported no sign of edema, cyanosis or clubbing in his extremities. He had a tender right hip in the weight bearing and sitting position. According to Dr. Hardman, plaintiff's knee looked normal and he had a fairly normal gait considering the hip fusion. Dr. Jain conducted a detailed examination of the plaintiff's lower extremities and reported good strength of the bilateral ankles, excellent flexion and extension of the left

knee, and a full range of motion.  Plaintiff had a limited internal rotation of the left

hip, and no pain with internal or external rotation in the hip or with axial loading

on the left side.  The knee ligaments were stable.  According to the ALJ, plaintiff

received conservative treatment, which was effective in alleviating the pain

symptoms.  Plaintiff took over the counter medication, a pain medication in the

form of a skin patch, physical therapy and injections, which was effective in

alleviating the pain symptoms.

Further, according to the ALJ, the medical opinions rendered by plaintiff's

treating physicians did not suggest that plaintiff had a disabling condition.  Norman

E. Walter, M.D., an orthopedic surgeon, evaluated plaintiff's right hip and knees

for possible surgery in April 2005 and recommended the use of a cane for long

walks and pain medication.  Matthew Hettie, M.D., a treating physician, diagnosed

plaintiff with hip ankylosis and arthralgia, an old sciatica and bilateral lateral

epicondylitis and recommended two visits to physical therapy and Motrin for

treatment.  Dr. Zielinski evaluated the plaintiff and opined that the pain originated

from the lumbar spine.  She did not recommend a total hip replacement, but

suggested more diagnostic examination and possible arthroscopy of the right knee.

Dr. Hardman opined that surgery was not an option as removing the fusion was

problematic and would cause greater problems with ambulation.  Larry L. Pack,

M.D., an orthopaedic surgeon conducted an evaluation of plaintiff in February

2007 and recommended adjusting the leg length by reducing the lift on the right foot and noted the disadvantages of a total hip replacement.  Dr. Pack also suggested that plaintiff obtain a third opinion from another physician and further diagnostic examination.

The ALJ concluded that plaintiff's ability to perform all or substantially all of the requirements of a full range of light work was impeded by additional limitations.  To determine the extent to which these limitations eroded the unskilled light occupational base, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with plaintiff's age, education, work experience, and residual functional capacity.  The vocational expert testified that, given all of these factors, the individual would be able to perform the requirements of representative unskilled occupations with a sit/stand option such as a machine operator, which existed at the reduced rate of 5,600 locally and 630,000 nationally, an assembler, which existed at the reduced rate of 9,000 locally and 989,000 nationally, and packer, which existed at the reduced rate of 2,300 locally and 214,000 nationally.

The ALJ concluded that, pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  Based on the testimony of the vocational expert, the ALJ concluded that, considering plaintiff's age, education, work experience, and

residual functional capacity, he was capable of making a successful adjustment to other work that exists in significant numbers in the national economy and was, therefore, not disabled.

       B.    <u>Parties' Arguments</u>

           1.    Plaintiff's claims of error

Plaintiff's claims that the hypothetical question posed to the vocational expert was flawed, that the ALJ failed to give appropriate weight to the opinions of plaintiff's treating physician, and that the ALJ failed to properly assess plaintiff's credibility.  At trial, plaintiff testified that "it just feels better if I get my feet up." He testified that the problem he had with sitting was "the hip fusion, I don't bend. ...I don't have a right hip, so ... sitting just is so uncomfortable, that I've had nerve damage also in the right leg and my leg goes to sleep and my back starts to throb." (Dkt. 7, p. 191).  Plaintiff further explained that he is "usually in a recliner" and his feet are "about waist level, I would say."  (Dkt. 7, pp. 192-193).  "It's just the most comfortable. It gets the weight off, it seems like it puts it right off, onto my back, away from my feet."  (Dkt. 7, p. 194).  Plaintiff testified that, because of pain, "I'm on a, a pain patch Fentanyl 75 milligram.  It's a patch that's a pain killer that lasts two days per patch."  (Dkt. 7, p. 192).  Plaintiff testified that "some of the medications keep me from sleeping and other make me drowsy."  (Dkt. 7, p. 193).

At trial, the VE confirmed that if an individual had the need to elevate their feet then work would be precluded.  (Dkt. 7, p. 200).

Plaintiff  was seen at Family Orthopedics on January 7, 2006 and it was felt that his "pain is coming from his back, possible spinal stenosis and we think that a conversion would be wrong for him at this time."  (Dkt. 7, p. 170).   Plaintiff was seen on January 26, 2006 by Dr. Norman Walter.  Dr. Walter discussed that in plaintiff's case "at time I think we are kind of in a quandary. While he is not working he seems to be fairly comfortable and thinks he can live with it."  (Dkt. 7, p. 166).  Dr. Walter went on to discuss that "the plan here is to have him follow up with Dr. Hettle and continue the pain medication."  (Dkt. 7, p. 167).  Dr. Walter states "I do not think he can go back to gainful employment on any job that requires any significant standing, walking, lifting, etc."  (Dkt. 7, p. 167).  In September 2006, Dr. Walter wrote to Dr. Hettle about performing an EMG to determine the pros and cons of the contemplated hip replacement.  (Dkt. 7, p. 160).  An EMG was performed on October 24, 2006 and Dr. Hettle concluded that "the major abductor, gluteus medius is likely atrophic" because "the EMG does not find any viable gluteal muscle recruitment on the right."  (Dkt. 7, p. 171).  Plaintiff was examined in February 2007 by Dr. Pack.  Dr. Pack wrote that plaintiff "suffered a serious problem and he has had his share of surgery.  The type of injury incurred and results from that type of acetabular fractures can easily kill somebody.  I think

he is very fortunate." (Dkt. 7, p. 151).  Accordingly, plaintiff asserts that the ALJ erred in failing to properly evaluate plaintiff's credibility.  Rather, plaintiff argues, the ALJ issued a one sentence conclusion that "after considering the evidence of record . . . the claimant's statements . . . of these symptoms are not entirely credible." (Dkt. 7, p. 16)

According to plaintiff, the medical records are "littered" with complaints of pain and that the only option other than the "conservative treatment" he was already receiving, was to have the hip replacement, which the medical doctors were unsure about at that time.  And, while the pain medications helped plaintiff cope with the pain, they did not cure the pain and plaintiff suffered from adverse side-effects.  Plaintiff argues that no doctor ever suggested that plaintiff did not have a medical condition responsible for his pain.  Nor did any doctor suggest that he did not need prescription medication for his pain.  According to plaintiff, the only question in the medical records is "what can we do to make his pain more tolerable?"  Dr. Walter wrote that "while he is not working he seems to be fairly comfortable and thinks he can live with it." (Dkt. 7, p. 166).  Plaintiff argues that the only reason he "can live with it is because he spends his days either lying in bed or reclined with his feet to at least waist level. He takes medications, although they cause side-effects of either insomnia or sleepiness."  According to plaintiff, if the ALJ were to find him credible, the ALJ would have to award benefits because

Report and Recommendation
Cross-Motions for Summary Judgment
*Hamper v. Comm'r*; No. 08-14016

plaintiff's testimony would preclude work, which was confirmed by the VE at the hearing.

Moreover, according to plaintiff, the ALJ never discussed Dr. Walter's opinion that plaintiff will not be able to "go back to gainful employment on any job that requires any significant standing, walking, lifting, etc." (Dkt. 7, p. 167). And, according to plaintiff, the ALJ's hypothetical was less restrictive than the opinion of plaintiff's treating doctors. Without a more detailed explanation of the reasoning for discounting plaintiff's treating physician's opinion, plaintiff asserts that there was not an adequate review for sufficiency of the evidence.

        2.      Commissioner's counter-motion for summary judgment

The ALJ found plaintiff could perform light work that allowed him to alternate between sitting and standing but did not require that he be on his feet for more than six out of eight hours or sit for more than two out of eight hours. (Dkt. 7, p. 15). The ALJ also found that plaintiff could no more than occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, and scaffolds. *Id*. According to the Commissioner, substantial evidence supports the ALJ's assessment of plaintiff's capacity to perform the exertional and non-exertional requirements of work. And, the Commissioner points out that no doctor described specific functional limitations greater than those included in the ALJ's detailed functional capacity assessment.

The ALJ found plaintiff not disabled because uncontradicted vocational testimony identified a significant number of jobs that plaintiff could perform given this level of functional capacity. The ALJ did not find plaintiff unimpaired. To the contrary, the ALJ concluded that plaintiff's ability to work was reduced by numerous restrictions, and he incorporated these detailed limitations in both his hypothetical questioning of the vocational expert, as well as his assessment of plaintiff's residual functional capacity. In assessing plaintiff's functional capacity, the ALJ expressly found his subjective allegations of incapacitating symptoms and limitations not fully credible to the extent that he alleged an inability to perform a limited range of light work. In reaching this conclusion, the ALJ expressly considered appropriate factors including the diagnostic and clinical medical evidence, medical opinion evidence, plaintiff's treatment, his medications, and his activities. The Commissioner asserts that plaintiff incorrectly characterizes the ALJ's credibility analysis as "a one sentence conclusion." A fair reading of the ALJ's decision reveals that the ALJ first set forth the factors relevant to assessing credibility, and then spent nearly two pages discussing those factors. (Dkt. 7, pp. 15-17). According to the Commissioner, the ALJ's reasonable weighing of these relevant credibility factors should not be disturbed on judicial review.

Plaintiff contends that the ALJ erred in finding him not fully credible and, as a result, posed an inaccurate hypothetical question to the vocational expert.

Report and Recommendation
Cross-Motions for Summary Judgment
*Hamper v. Comm'r*; No. 08-14016

Plaintiff also asserts that the ALJ did not accurately assess his need to elevate his feet and difficulty sitting related to his hip fusion. However, according to the Commissioner, no doctor described plaintiff as being limited to a greater extent than the ALJ found. According to the Commissioner, while plaintiff's doctors consistently opined that plaintiff was unable to return to his past work as an automotive assembler, no doctor described plaintiff as "disabled" or incapable of performing less demanding work. In February 2005, treating physician Dr. Hartman restricted plaintiff from performing work that required that he stand for more than two hours or bend beyond waist level. (Dkt. 7, p. 111). In April 2005, two months before plaintiff's alleged onset of disability, treating orthopedist Dr. Walter recommended only that plaintiff use a cane when taking "long walks." (Dkt. 7, p. 137). The ALJ's assessment of plaintiff's residual functional capacity was entirely consistent with these treating experts' opinions.

In June 2005, the time of plaintiff's alleged onset of disability, his doctors recommended that he refrain from his automotive assembly job for three months to see if his symptoms eased. (Dkt. 7, pp. 132-35). As the three month period neared its end, plaintiff told Dr. Walter that he did not believe he was ready to return to his past work. (Dkt. 7, p. 130). Dr. Walter did not, however, describe plaintiff as incapable of all work at this time. Rather, he said that but for pain in plaintiff's right hip and knees, "everything seems to be hunkey dorey." *Id*. In January 2006,

Report and Recommendation
Cross-Motions for Summary Judgment
*Hamper v. Comm'r*; No. 08-14016

Dr. Walter opined that plaintiff would not be able to return to gainful employment that required "any significant standing, walking, lifting, etc." (Dkt. 7, p. 167). According to the Commissioner, the ALJ's finding that plaintiff was limited to work that permitted him to alternate between sitting and standing as needed is consistent with the treating expert's opinion.

The Commissioner further argues that none of plaintiff's treating medical opinions are inconsistent with the ALJ's determination that plaintiff could perform light work that allowed him to alternate between sitting and standing, but did not require him to be on his feet for more than six out of eight hours or sit for more than two out of eight hours. According to the Commissioner, the ALJ's assessment of plaintiff's residual functional capacity was largely consistent with plaintiff's own description of his abilities. Plaintiff testified that he was more comfortable standing than sitting, could stand for one half hour and sit for one half as long, and could comfortably lift and carry ten pounds. (Dkt. 7, pp. 191-192).

Plaintiff contends that the ALJ's assessment of his residual functional capacity failed to accommodate his testimony that he was most comfortable while seated in a recliner with his feet elevated. The Commissioner contends, however, that no doctor described plaintiff as having such a limited in his ability to sit, either in the length of time he could sit, or needing to recline and elevate his feet while seated. Plaintiff also testified that he was able to sit and use his right leg

sufficiently to drive on a regular basis. (Dkt. 7, p. 186). The Commissioner argues that merely because plaintiff "feels better" in a reclined position, he was not incapable of assuming other postures as required to perform relatively undemanding work activity. The Commissioner argues that plaintiff's reliance on Dr. Walter's statement that "while he is not working he seems to be fairly comfortable and thinks he can live with it," is untenable because this statement of Dr. Walter's is not a medical opinion that plaintiff was required to recline with his legs elevated. Rather, according to the Commissioner, the statement appears to be consistent with Dr. Walter's prior statements that plaintiff's symptoms were exacerbated by his demanding past work.

Based on the foregoing, the Commissioner asserts that the decision below should be affirmed.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may...consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits...physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20

C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

  2. Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).   A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability

benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

"The opinion of a non-examining physician, on the other hand, 'is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams*

*v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

    C.    <u>Analysis and Conclusions</u>

    The ALJ determined that plaintiff possessed the residual functional capacity

to return to a limited range of light work.  (Dkt. 7).

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects weighing
> up to 10 pounds.  Even though the weight lifted may be
> very little, a job is in this category when it requires a
> good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of
> arm or leg controls. To be considered capable of
> performing a full or wide range of light work, you must
> have the ability to do substantially all of these activities.
> If someone can do light work, we determine that he or
> she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or
> inability to sit for long periods of time.

20 C.F.R. 404.1567(b).  Social Security Ruling (SSR) 83-10 clarifies this

definition and provides that:

> "Occasionally" means occurring from very little up to
> one-third of the time.  Since being on one's feet is
> required "occasionally" at the sedentary level of exertion,
> periods of standing or walking should generally total no
> more than about 2 hours of an 8-hour workday, and
> sitting should generally total approximately 6 hours of an
> 8-hour workday.  Work processes in specific jobs will

> dictate how often and how long a person will need to be
> on his or her feet to obtain or return small articles.

After review of the record, I conclude that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to plaintiff's claim. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### 1.   RFC, hypothetical question and credibility

No treating physician opined that plaintiff was functionally restricted beyond the limitations as found by the ALJ. As noted by Dr. Walter, these restrictions precluded plaintiff from performing his former work, but Dr. Walter never restricted plaintiff in any other respect. *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability."). To the extent that plaintiff points to other subjective limitations, such as the need for elevation of his legs or use of a recliner, such subjective evidence is only considered to "the extent [it] can

reasonably be accepted as consistent with the objective medical evidence and other evidence." *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20 C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986).  In this case, there is no such evidence and the ALJ's RFC finding was entirely consistent with the restrictions imposed by his treating physicians.

Indeed, plaintiff's claim of additional restrictions and limitations beyond those imposed by his treating physician seems based on the mere existence of his condition, rather than on any resulting impairments or specific restrictions. Plaintiff testified that the problem he had with sitting was "the hip fusion, I don't bend. ...I don't have a right hip, so ... sitting just is so uncomfortable, that I've had nerve damage also in the right leg and my leg goes to sleep and my back starts to throb." (Dkt. 7, p. 191).  While the record reveals that plaintiff's condition resulted in several limitations, as found by the ALJ, the mere existence of his hip fusion (which was performed in 1991) is insufficient to establish an inability to work. *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's

severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms.").

Given that a severe impairment does not equate to disability, the undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and properly incorporated into the RFC finding.  The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate."  *Jones*, 336 F.3d at 476.  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses.  *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999).  An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "The rule that a hypothetical question must incorporate all of

the claimant's physical and mental limitations does not divest the ALJ of his or her

obligation to assess credibility and determine the facts." *Redfield v. Comm'r of*

*Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005).  The ALJ  is only required to

incorporate the limitations that he finds credible.  *Casey*, 987 F.2d at 1235.  This

obligation to assess credibility extends to the claimant's subjective complaints such

that the ALJ "can present a hypothetical to the VE on the basis of his own

assessment if he reasonably deems the claimant's testimony to be inaccurate."

*Jones*, 336 F.3d at 476.  An ALJ's findings based on the credibility of an applicant

are to be accorded great weight and deference, particularly since the ALJ is

charged with the duty of observing a witness's demeanor and credibility.  *Walters*

*v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

        The ALJ reasonably concluded that plaintiff's claims were not entirely

credible for several reasons.  First, the ALJ concluded, after a detailed review, that

diagnostic examinations did not show that plaintiff had a disabling condition.

The undersigned finds no basis to disturb the ALJ's credibility findings.  Second,

after an extensive review of plaintiff's treating physicians notes and records, the

ALJ concluded that the medical opinions rendered did not suggest that plaintiff had

a disabling condition.  In addition, the record reveals that plaintiff complained little

to his physicians about being unable to sit.  (Dkt. 7, p. 57 (12/13/05 Function

Report: "difficulty standing, bending, stooping"); p. 78 (12/1/05 Disability Report

Appeal: "hard time walking for very long because of back and R/hip"); p. 100 (RFC evaluation "ADLs are very vauge [sic] – reports can't stand or walk long and has difficulty bending and stooping."); p. 111 (2/2/05 Note from Dr. Hardman: "Patient was given note for work restrictions including no prolonged standing greater than 2 hours, no bending beyond waist level.").[1] The undersigned finds no basis to disturb the ALJ's credibility findings.

The ALJ's RFC findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence, and in particular, the findings and assessments of Dr. Walter. *See Griffeth*, 217 Fed.Appx. at 429; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

2.    Medication side effects

The undersigned suggests that plaintiff's claim that the ALJ erred because he failed to take into account plaintiff's testimony regarding medication side effects should be rejected.  "Allegations of a medication's side effects must be supported by objective medical evidence." *Daniels v. Comm'r of Soc. Sec.*, 2008 WL

---

[1]  The undersigned does not suggest that sitting presented no problems for plaintiff, but rather, merely suggests that, as concluded by the ALJ, it was not as severe of a problem as stated by plaintiff in his testimony. (*See e.g.*, Dkt. 7, p. 87) ("The claimant...had to re-position his self about every fifteen to twenty minutes during the interview due to the problems with his hips and back.").

4394356 (W.D. Mich. 2008), citing, *Farhat v. Sec'y of Health and Hum. Servs.*, 1992 WL 174540, *3 (6th Cir. 1992); *Bentley v. Comm'r of Soc. Sec.*, 2001 WL 1450803, *1 (6th Cir. 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Sec'y of Health and Hum. Servs.*, 1993 WL 291301, *7 (6th Cir. 1993) (no objective medical evidence supported claimant's allegation that medication made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant); *see also Cross v. Comm'r of Soc. Sec.*, 2008 WL 5071714, *6 (W.D. Mich. 2008). Plaintiff does not point to any suggestion in plaintiff's medical records that he was impaired by any medication side effects. On review of the transcript, the undersigned found that in July 2005, plaintiff reported side effects of sedation and constipation from gebapetin. (Dkt. 7, p. 119). However, in November 2005, plaintiff reported to Dr. Hettle that he stopped taking gebapetin because it was not helping his pain and it made him sedated. (Dkt. 7, p. 117). This brief period during which plaintiff suffered a sedation side effect, without more, is insufficient to disturb the ALJ findings.

      3.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

<table>
<tr><td></td><td>s/Michael Hluchaniuk</td></tr>
<tr><td>Date: December 30, 2009</td><td>Michael Hluchaniuk<br>United States Magistrate Judge</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I certify that on December 30, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Mikel E. Lupisella, Susan K. DeClercq, and Commissioner of Social Security.

s/Darlene Chubb_____
Judicial Assistant
(810) 341-7850
Darlene_Chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Hamper v. Comm'r*; No. 08-14016
